IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:15-CR-82-D

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| TONY JEROME MURPHY, | ) | |
| | ) | |
| Defendant. | ) | |

On March 16, 2023, Tony Jerome Murphy ("Murphy" or "defendant") moved for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) and filed exhibits in support [D.E. 55, 56]. On March 30, 2023, the United States responded in opposition [D.E. 60]. On April 7, 2023, Murphy replied [D.E. 63]. As explained below, the court denies Murphy's motion.

I.

Murphy is a long time, violent recidivist and a drug dealer in Wilmington, North Carolina accountable for distributing 56.1 grams of cocaine and 163.56 grams of cocaine base ("crack") in his latest conviction. See Presentence Investigation Report ("PSR") [D.E. 31] ¶¶ 9–11. On November 23, 2015, pursuant to a plea agreement, Murphy pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. §§ 942(c) and 942(c)(1)(A)(i) (count 5) and possession with intent to distribute 28 grams or more of cocaine base ("crack") in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(B) (count 7). See [D.E. 23, 25].

On February 26, 2016, the court held Murphy's sentencing hearing. See [D.E. 37, 46]. The court calculated Murphy's offense level to be 31, his criminal history category to be VI, and his guideline range on counts 5 and 7 to be 262 to 327 months' imprisonment. See [D.E. 46] 12; PSR ¶ 66. After considering the arguments of counsel, the court sentenced Murphy to 60 months' imprisonment on count 5 and 206 consecutive months' imprisonment on count 7, yielding a total term of 266 months' imprisonment. See [D.E. 46] 23. Murphy appealed. See [D.E. 40]. On May 11, 2017, the Fourth Circuit affirmed. See United States v. Murphy, 689 F. App'x 180, 181–83 (4th Cir. May 11, 2017) (per curiam) (unpublished); [D.E. 49].

## II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A); see United States v. Ferguson,

2

55 F.4th 262, 268 (4th Cir. 2022). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, a defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason for a sentence reduction. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13 cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and

3

compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children or incapacitated spouse or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. See U.S.S.G. § 1B1.13 cmt. n.1(A). "[A]n extraordinary and compelling reason need not have been unforeseen at the time of sentencing in order to warrant" a sentence reduction. Id. § 1B1.13 cmt. n.2.

Murphy submitted written requests for compassionate release to his warden on March 21, 2022. See [D.E. 55-1] 2. Therefore, Murphy has satisfied the administrative exhaustion requirement, and the United States does not argue that Murphy failed to exhaust his administrative remedies. See Ferguson, 55 F.4th at 268; Muhammad, 16 F.4th at 129–30.

Murphy seeks compassionate release pursuant to section 3582(c)(1)(A) and cites the COVID-19 pandemic, the condition in prison, his medical conditions (diabetes, hypertension, anemia, hyperlipidemia, overweight, seasonal allergies, and head trauma and mental health issues from his youth), his age, his release plan, his rehabilitation efforts, and the kinds of sentences available today. See [D.E. 55] 12–22.

As for the "medical condition of the defendant" policy statement, the policy statement requires that the defendant be "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Murphy has diabetes, hypertension, anemia, hyperlipidemia, and seasonal allergies, is overweight, and has head trauma and mental health issues from his youth. See [D.E. 55] 11–17. Murphy's medical conditions are under control. See [D.E. 56].

4

Murphy argues that his medical conditions put him at heightened risk of serious infection or death from COVID-19. See [D.E. 55] 5–22. Murphy, however, received the Pfizer COVID-19 vaccine. See [D.E. 55] 15; [D.E. 56] 28. The vaccine provides protection. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."); United States v. Hald, 8 F.4th 932, 936 n.2 (10th Cir. 2021) (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); United States v. Broadfield, 5 F.4th 801, 803 (7th Cir. 2021) ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); United States v. Baeza-Vargas, 532 F. Supp. 3d 840, 843–46 (D. Ariz. 2021) (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Murphy from COVID-19 whether

5

he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46.

Besides the heightened risk of COVID-19 infection due to the conditions in prison, Murphy does not otherwise allege that the BOP is not treating and monitoring his medical conditions or that he is unable to provide self-care while incarcerated. Moreover, arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current medical conditions at FCI Gilmer where Murphy is incarcerated, and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jspbop_covid-19_response (last visited May 2, 2023). Therefore, reducing Murphy's sentence because of his risk factors and the general risk of COVID-19 in prison does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

As for the "other reasons" policy statement, the court assumes without deciding that the COVID-19 pandemic, the condition in prison, Murphy's medical conditions, his rehabilitative efforts, and his age together are compelling reasons under section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Murphy's sentence. See Concepcion v. United States, 142 S. Ct. 2389, 2404 (2022); United States v. Troy, 64 F.4th 177, 185 (4th Cir. 2023); United States v. Reed, 58 F.4th 816, 821–24 (4th Cir. 2023); Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

6

As for Murphy's history and characteristics, Murphy is 51 years old and pleaded guilty to possession of a firearm in furtherance of a drug trafficking crime and possession with intent to distribute 28 grams or more of cocaine base ("crack"). See [D.E. 23]. Murphy is a long time, violent recidivist and a drug dealer in Wilmington, North Carolina accountable for distributing 56.1 grams of cocaine, 163.56 grams of cocaine base ("crack") on his latest conviction. See PSR ¶¶ 9–11. Murphy's criminal history includes convictions for damage to personal property, assault with a deadly weapon, accessory after the fact to murder, bank robbery and aiding and abetting, assault on a federal official with a dangerous weapon, injury to personal property, obtaining property by false pretense (two counts), and felon in possession of a firearm and ammunition. See id. at ¶¶ 16–26.

Murphy has a generally positive record while in federal custody. Murphy has not committed any infractions in his third stint in the BOP, has earned his GED in federal prison, has participated in other educational courses, and has enrolled in the Financial Responsibility Program and appears to be making payments. See [D.E. 55-2, 55-3]; [D.E. 55] 19. If released, Murphy plans to live with his sister in Warsaw, North Carolina. See [D.E. 55-1] 2. His sister and a local church are willing to help him. See id. Murphy also plans to work as a maintenance person for Omnia Beauty Academy in Clinton, North Carolina. See [D.E. 55-5]. Murphy notes that he would be on supervised release with a probation officer supervising him. See [D.E. 38] 4–5. The court has taken this information into account. See Pepper, 562 U.S. at 491; High, 997 F.3d at 187–91; Chambers, 956 F.3d at 671–75; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398.

The court must balance Murphy's generally positive performance in federal custody this time against his appalling criminal conduct, his violent criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion, 142 S. Ct. at 2403–04; Pepper, 562 U.S. at 480–81; Troy, 64 F.4th at 185; Reed, 58

7

F.4th at 821–24; United States v. Roane, 51 F.4th 541, 551–52 (4th Cir. 2022); High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered the COVID-19 pandemic, the condition in prison, Murphy's medical conditions, his rehabilitative efforts, his release plan, his supportive family, and his age.

Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Murphy's arguments, the government's persuasive response, the need to punish Murphy for his serious criminal behavior, to incapacitate Murphy, to promote respect for the law, to deter others, and to protect society, the court denies Murphy's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2403–04; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Troy, 64 F.4th at 185; Reed, 58 F.4th at 821–24; Roane, 51 F.4th at 551–52; Hargrove, 30 F.4th at 198–200; Kibble, 992 F.3d at 331–32; High, 997 F.3d at 187–91; United States v. Ruffin, 978 F.3d 1000, 1008–09 (6th Cir. 2020); United States v. Chambliss, 948 F.3d 691, 693–94 (5th Cir. 2020); United States v. Hill, No. 4:13-CR-28, 2020 WL 205515, at *2 (E.D.N.C. Jan. 13, 2020) (unpublished), aff'd, 809 F. App'x 161 (4th Cir. 2020) (per curiam) (unpublished).

III.

In sum, the court DENIES defendant's motion for compassionate release [D.E. 55].

SO ORDERED. This _2_ day of May, 2023.

                                                   JAMES C. DEVER III
                                                   United States District Judge